UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE BP p.L.c. DERIVATIVE LITIGATION | ) ) ) |

Case No. 06-cv-6168

AUG 2 1 2007

## NOTICE OF APPEAL

Notice is hereby given that Plaintiffs in the above-captioned action, by counsel, hereby

appeal to the United States Circuit Court of Appeals for the Second Circuit from the Court's

Opinion and Order dated July 23, 2007.  A true and correct copy of that Opinion & Order is

attached hereto as Exhibit A.

Dated:  August 20, 2007

Respectfully submitted,

WEISS & LURIE

Joseph H. Weiss (JW-4534)
James E. Tullman (JT-9597)
551 Fifth Avenue
New York, New York 10176
(212) 682-3025

Attorneys for Plaintiffs

# EXHIBIT A

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/2/3/07

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------x

IN RE BP p.l.c. DERIVATIVE LITIGATION          :

                                               :        06 Civ. 6168 (HB)

----------------------------------------------- :

THIS DOCUMENT RELATES TO:                      :        **OPINION & ORDER**

                                               :

All Actions                                    :

--------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge\*:**

BP p.l.c., BP America, Inc., BP Products North America, Inc., BP Corp. North America, BP Exploration (Alaska) Inc., sixteen members of BP's current board of directors,[1] nine former directors,[2] eight current and former directors, officers and employees of BP's subsidiaries,[3] and twenty "John Doe" defendants (collectively "Defendants" or "BP")[4] move this Court to dismiss BP shareholders' derivative action pursuant to Fed. R. Civ. P. 12(b)(6) alleging that Plaintiffs fail to state a valid derivative claim under governing English law. Alternatively, Defendants argue, this action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction over the movants on the ground of *forum non conveniens*. For the following reasons, Defendants' Motion to Dismiss is GRANTED in its entirety.

## I.    FACTUAL BACKGROUND

On August 14, 2006, Plaintiff Sue Pincus filed a complaint against Defendants which alleged three principal claims – breach of fiduciary duty (Count I), waste of corporate assets (Count II), and indemnification (Count III) – on behalf of BP in connection with the well-publicized leaks and temporary shutdown of an oil pipeline in Prudhoe Bay, Alaska, the fatal explosion at BP's Texas City oil refinery, and

---

\* Danielle Brody, a summer 2007 intern in my Chambers, and currently a second-year law student at Vanderbilt Law School, provided assistance in the research and drafting of this Opinion.

[1] See Am. Compl. ¶¶ 15-30 (naming John Browne, Byron E. Grote, David C. Allen, Iain C. Conn, Tony A.B. Hayward, John A. Manzoni, Peter D. Sutherland, Ian Prosser, John H. Bryan, Antony Burgmans, Erroll B. Davis, Jr., Douglas J. Flint, DeAnne S. Julius, Tom McKillop, Walter E. Massey and William H. Castell).

[2] See Am. Compl. ¶¶ 31-39 (naming Michael P. Miles, H. Wilson, Robin B. Nicholson, Charles F. Knight, Floris A. Maljers, Richard L. Olver, Rodney F. Chase, John G.S. Buchanan and William Douglas Ford).

[3] See Am. Compl. ¶¶ 40-47 (naming Robert A. Malone, Ross J. Pillari, Mark Radley, Dennis Abbott, Cody Claborn, Cameron Byers, Martin Marz and James Summers).

[4] Motion to Dismiss is filed on behalf of all defendants named in the Second Amended Derivative Complaint except the six individuals identified as the "BP traders"—Dennie Abbott, Cameron Byers, Cody Claborn, Martin Marz, Mark Radley, and James Summers—who were represented by separate counsel. By notice of decree filed on March 27, 2007, Plaintiffs voluntarily dismissed all claims against BP traders.

commodities trading activities by BP traders which have been previously found to violate company policy and state and federal law.[5] Plaintiff does not allege any federal causes of action.

On November 13, 2006, Plaintiffs filed a Consolidated Amended Complaint and Defendants moved to dismiss on December 13, 2006. Thereafter, the Court granted leave to file an Amended Complaint, which Plaintiffs did on January 31, 2007. On March 1, 2007, Defendants moved this Court to dismiss Plaintiffs' Second Amended Derivative Complaint.

### a. Prudhoe Bay Pipeline

BP owns and operates an oil transit pipeline system serving the Prudhoe Bay, Alaska oil field.[6] Am. Compl. ¶ 2. Shareholder Plaintiffs allege the pipeline system has been decaying for years, Defendants have been aware of the decay, Defendants have failed to take any remedial action, and consequently, the oil transit pipeline system corroded to the extent that half of the field, which produces almost three-quarters of the entire field's output, became non-operational. Id. Plaintiffs further allege that as a result of inadequate maintenance and decay, the pipeline leaked 6,400 barrels of crude oil in March of 2006, the largest leak in the field's history. Id. Further, Plaintiffs assert that even after such an unfortunate event, Defendants still failed to take any substantial remedial action. Id. Thereafter, the pipeline leaked again on August 7, 2006, and BP was forced to shut down the pipeline system altogether. Plaintiffs allege that as a direct result of the shutdown of the pipeline, BP "faces hundreds of millions of dollars in costs to remedy the damage, lost earnings, a criminal probe by the Environmental Protection Agency, significant civil and criminal liability, regulatory scrutiny and action and the wrath of customers nationwide who are facing ever higher gasoline prices at the pump." Id. ¶ 3.

### b. Texas City Refinery

The Texas City refinery is BP's largest refinery in the United States, employs

---

[5] Am. Compl. ¶ 7. Plaintiffs seek an award of monetary damages, injunctive remedies, and other forms of relief including indemnification for all losses and/or damages sustained by BP by reason of the acts and omissions complained of; disgorgement of profits; a permanent injunction enjoining Defendants and those under their supervision and control to refrain from further violations and to implement corrective measures including a system of internal controls and procedures sufficient to prevent the repetition of the acts complained of. Id. ¶ 116.

[6] This is the largest oil transit pipeline system in the United States, producing eight percent of national output.

1,800 people, and refines approximately 460,000 barrels of crude oil each day. Id. ¶ 4. In March 2005, an explosion at the Texas City refinery killed 15 people and injured 180. Id. BP's Chief Executive Officer, according to Plaintiffs, described the Texas explosion as "the worst tragedy [he's] known in 38 years with the company." Id. Defendants attribute the explosion to equipment malfunctions. Id. ¶ 76-80. Several lawsuits were filed and the explosion is the subject of ongoing government investigations. Id. ¶ 6. The U.S. Chemical Safety Board concluded that the explosion could have been avoided by adherence to simple safety procedures, and that BP's management was aware of the severe safety problems well before the explosion. Id. ¶ 6. BP has since disclosed that an internal audit revealed "big lapses in management." Id. ¶ 83. As a result of the explosion, BP faces billions of dollars in costs to remedy the damages, and civil and criminal investigations by various government organizations and the families of the victims.[7] Id. ¶¶ 5, 82, 87.

### c. Commodities Trading Activities

Plaintiffs claim that in February 2004, Defendants, with the approval of BP senior executives, attempted to buy all available propane in the market to control the market and increase the price of propane. Id. ¶¶ 92, 97. Plaintiffs also claim that BP attempted to manipulate crude-oil benchmarks which would impact billions of dollars of transactions in BP's favor. Id. ¶ 8. Further, the United States Department of Justice and the Commodity Futures Trading Commission are investigating alleged irregular trading of gasoline by BP on the New York Mercantile Exchange in 2002, and the U.S. Senate is investigating whether Defendants' decision to halt all Prudhoe Bay oil field production was an attempt to manipulate the market. Id. ¶¶ 9, 100. BP paid a $2.5 million fine in September 2003 to the New York Mercantile Exchange to resolve allegations of crude oil trading and market manipulation violations in 2001 and 2002. Id.

### d. The Alaska Derivative Action

Approximately six weeks after Pincus and Gross filed the instant action in this Court, on October 2, 2006, plaintiff shareholders UNITE HERE National Retirement Fund ("Unite Here") and Jeffery Pickett ("Pickett") filed a derivative complaint in the

---

[7] For example, approximately $2 billion has been appropriated for distribution to affected families and in anticipation of civil claims, and a $21.3 million civil fine has been issued by the Occupational Safety and Health Administration for three hundred health and safety violations.

Superior Court for the State of Alaska, Third Judicial District at Anchorage on behalf of BP and three of its U.S. subsidiaries.[8]  Thereafter, plaintiff London Pensions Fund Authority joined the Alaska action. On October 19, 2006, plaintiffs Sandra Donnelly and Patricia Foreman filed a separate, substantially similar case in the same court.  On October 24, 2006, the action filed by UNITE HERE and Pickett was removed to the United States District Court for the District of Alaska, and, thereafter, pursuant to a stipulation between the parties, remanded to the Alaska state court on December 11, 2006.  On January 11, 2007, plaintiffs filed their Consolidated Amended Verified Shareholder Derivative Complaint (the "Alaska Complaint"), which named BP as a nominal defendant (the company in which they owned shares), as well as three U.S.-based subsidiaries of BP—BP America Inc. ("BP America"), The Standard Oil Co. ("Standard Oil") and BP Exploration (Alaska) Inc. ("BPXA"),  all sixteen current members of BP's board of directors,[9] nine former directors of BP,[10] and thirteen current and former directors, officers and employees of certain of BP's subsidiaries.[11]

Plaintiffs in the Alaska action allege defendants breached their fiduciary duties and allege as well waste of corporate assests predicated on "[d]efendants' grossly negligent—if not intentional—failure to oversee the corporate assets of [BP, which] exposed BP to tens of millions of dollars in damages, potentially hundreds of millions of dollars in remedial costs and badly damaged BP's corporate image and reputation." Alaska Compl. ¶ 5. Plaintiffs allege defendants, in their roles as executives, directors or employees of BP, participated or aided and abetted in acts of alleged mismanagement and seek monetary and punitive damages, injunctive remedies and other forms of equitable relief.[12]  Id. ¶¶ 21, 146-160 & Prayer for Relief.  As with the derivative case at bar, plaintiffs' claims in the Alaska derivative action on behalf of BP are mainly predicated on

[8] In Re BP p.l.c. Derivative Litigation, No. 3AN-06-11929CI (Super. Ct. Alaska May 17, 2007) (Smith, J.).
[9] See Alaska Compl. ¶¶ 30-45 (naming as defendants David C. Allen, Lord John Browne, Antony Burgmans, John H. Bryan, William M. Castell, Iain C. Conn, Erroll B. Davis, Jr., Douglas J. Flint, Byron E. Grote, Anthony B. Hayward, DeAnne S. Julius, John A. Manzoni, Walter E. Massey, Sir Thomas McKillop, Sir Ian Prosser and Peter D. Sutherland).
[10] See id. ¶¶ 46-54 (naming as defendants John G.S. Buchanan, Rodney F. Chase, William Douglas Ford, Charles F. Knight, Floris A. Maljers, Henry Michael P. Miles, Robin B Nicholson, Richard L. Oliver and Michael H. Wilson).
[11] See id. ¶¶ 55-67 (naming as defendants Paula J. Clayton, Debra A. Dowling, Alastair M. Graham, Robert A. Malone, Steve Marshall, Neil R. McCleary, Ian Springett and Richard C. Wollam).
[12] See supra note 5.

4

three events: (1) BPXA's temporary shutdown of the Prudhoe Bay Oilfield in Alaska in 2006; (2) the tragic explosion at the Texas City refinery owned and operated by BP Products North America Inc.; and (3) recent investigations of certain energy market trading activities involving BP or its subsidiaries. On May 17, 2007, Judge Jack Smith of the Alaska Superior Court denied defendants' motion to dismiss the derivative complaint.[13]

## II.    STANDARD OF REVIEW

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint should be dismissed for failure to state a claim if it appears beyond doubt that plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Shah v. Meeker*, 435 F.3d 244, 246 (2d Cir. 2006).

The court should dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(2) when it lacks personal jurisdiction over a defendant. When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994). Dismissal pursuant to *forum non conveniens* is warranted if the court finds that another court is the more appropriate forum to adjudicate the dispute. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 248 n. 13 (1981).

## III.    DISCUSSION

Defendants advance three main arguments in support of their motion to dismiss— (1) the Complaint fails to state a cognizable claim because the governing law in this instance, English law, generally prohibits a shareholder from bringing a derivative action on its behalf except in three very narrow circumstances pursuant to the Companies Act 1985; (2) none of the individual moving Defendants is subject to personal jurisdiction in New York because all are non-domiciliaries with insufficient contacts with New York to confer general jurisdiction; and (3) the Court should decline to adjudicate Plaintiffs' claims under the doctrine of *forum non conveniens* because England, not New York, has the greatest interest in this litigation. Not surprisingly, Plaintiffs challenge Defendants' three arguments and focus primarily on the proper choice of law analysis. Therefore, I will address the choice of law analysis in the first instance.

---

[13] *In Re BP p.l.c. Derivative Litigation*, No. 3AN-06-11929.

5

### a.   Internal Affairs Doctrine

This Court must apply New York's choice of law principles to determine the governing law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). New York's choice of law rules provide different choice of law doctrines depending on the nature of the claim—i.e. torts or contracts.[14] Generally, New York law requires that claims related to corporate affairs—i.e., issues involving the rights and liabilities of a corporation—are governed by the internal affairs doctrine.[15]

That doctrine provides that the rights of a shareholder in a foreign company (including the right to sue derivatively) are determined by the law of the place where the company is incorporated. *See Atherton v. FDIC*, 519 U.S. 213, 224 (1997) ("The internal affairs [doctrine] . . . seeks only to avoid conflict by requiring that there be a single point of legal reference."); *Edgar v. Mite Corp.*, 457 U.S. 624, 645 (1982) ("The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the

[14] For tort cases: *See* Drenis v. Haligiannis, 452 F. Supp. 2d 418, 427 (S.D.N.Y. 2006) (in tort cases, New York courts apply the "interest analysis to identify the jurisdiction that has the greatest interest in the litigation based on the occurrences within each jurisdiction, or contacts of the parties with each jurisdiction, that relate to the purpose of the particular law in conflict."); BlackRock, Inc. v. Schroders PLC, No. 07cv3183, 2007 WL 1573933, at *11 (S.D.N.Y. May 30, 2007); Padula v. Lilam Properties Corp., 84 N.Y.2d 519, 521 (1994); Babcock v. Jackson, 12 N.Y.2d 473, 478-482 (1963). For contracts cases: *See* Fin. One Pub. Co. v. Lehman Bros Special Fin., Inc., 414 F.3d 325, 336-37 (2d Cir. 2005) (cited by Plaintiffs in their opposition) ("In contracts cases, New York courts apply 'the center of gravity' or 'grouping of contacts' choice of law theory."); Auten v. Auten, 308 N.Y. 155, 160-61 (1954) (in contracts cases, under the center of gravity or grouping of contacts theory of conflict of laws, courts "lay emphasis upon the law of the place which has the most significant contacts with the matter in dispute."). For the distinction between the two respective doctrines: *See* Berwick v. New World Network Int'l, Ltd., No. 06cv2641, 2007 WL 949767, at *20 (S.D.N.Y. March 28, 2007) (The New York Court of Appeals has clarified the difference between the interest analysis for tort cases, and the center of gravity or grouping of contacts analysis that applies in contract cases) (citations omitted); Matter of Allstate Ins. Co. (Stolarz), 81 N.Y.2d 219, 225-26 (1993).

[15] Rest. (2d) of Conflict of Laws at § 309 ("The local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders, except where, with respect to the particular issue, some other state has a more significant relationship ... in which event the local law of the other state will be applied."); Hausman, 299 F.2d at 702-06; Buckley v. Deloitte & Touche USA LLP, No. 06cv 3291, 2007 U.S. Dist. LEXIS 37107, *37 (S.D.N.Y. May 22, 2007); Winn v. Schafer, No. 06cv10170, 2007 U.S. Dist. LEXIS 33936, at *4-5 (S.D.N.Y. May 7, 2007); Seybold v. Groenink, No. 06cv772, 2007 U.S. Dist. LEXIS 16994, at *16-18 (S.D.N.Y. Mar. 12, 2007); Marcus v. Lincolnshire Mgmt., Inc., 409 F. Supp. 2d 474, 481 (S.D.N.Y. 2006) (recognizing that "New York adheres to the internal affairs doctrine pursuant to which the internal affairs of a corporation are governed by the law of the state of its incorporation"); Locals 302 and 612 of the Intl. Union of Operating Engineers v. Blanchard, No. 05cv5954, 2005 U.S. Dist. LEXIS 17679, at *8 (S.D.N.Y. Aug. 25, 2005) (in a shareholder derivative suit, the court applied internal affairs doctrine); City of Sterling Heights Police v. Abbey Nat'l, PLC, 423 F. Supp. 2d 348, 363-64 (S.D.N.Y. 2006) (In a securities fraud action against a London bank, the court applied the internal affairs doctrine); Scottish Air Int'l, Inc. v. British Caledonian Group, PLC, 81 F.3d 1224, 1234 (2d Cir. 1996) ("Under the generally-recognized choice-of-law rule, questions relating to internal affairs of corporations are decided in accordance with the law of the place of incorporation.") (citations omitted).

relationships among or between the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands.").

The applicability of the internal affairs doctrine in this instance turns on whether, when, and if New York State regularly applies the internal affairs doctrine in its choice of law inquiry to our facts.[16]  While there is no mechanical application of the internal affairs doctrine in New York,[17] courts in almost every instance when faced with a choice of law inquiry in derivative actions alleging a breach of fiduciary duty have applied the internal affairs doctrine.[18]

The internal affairs doctrine has a public policy exception, which it appears comes in two varieties.  First, a public policy exception is available when the pertinent laws of the jurisdiction of incorporation are objectively "immoral" or "unjust."[19]  Second, a public policy exception applies where "application of the local law of some other state is required by reason of the overriding interest of that other state in the issue to be

[16] See Hausman, 299 F.2d at 702-06; Buckley, 2007 U.S. Dist LEXIS 37107, at *37 ("Pursuant to New York's choice of law rules -- and specifically the "internal affairs doctrine" – a claim of breach of fiduciary duty owed to a corporation is governed by the law of the state of incorporation.") (citations omitted); Winn, 2007 U.S. Dist. LEXIS 33936, at *5 ("New York choice of law rules apply the internal affairs doctrine, which dictates that the law of the state of incorporation governs the adjudication of a corporation's internal affairs, including questions as to the relationship between the corporation's shareholders and its directors.") (internal citations omitted); Seybold, 2007 U.S. Dist. LEXIS 16994, at *18 ("[O]n the specific question of shareholder standing to bring a derivative suit, the federal appeals court has itself applied the internal affairs doctrine, finding for example that the law of Venezuela barred a plaintiff from bringing a derivative action on behalf of a corporation chartered in that jurisdiction."); Marcus, 409 F. Supp. at 481; Galef v. Alexander, 615 F.2d 51, 58 (2d Cir. 1980); Polar Int'l Brokerage Corp. v. Reeve, 187 F.R.D. 108, 116 (S.D.N.Y. 1999).
[17] Greenspun v. Lindley, 36 N.Y.2d 473, 478 (1975) ("We reject any automatic application of the so-called 'internal affairs' choice-of-law rule, under which the relationship between shareholders and trustees of a business trust by strict analogy to the relationship between shareholders and directors of a business corporation would be governed by the law of the State in which the business entity was formed."); Norlin v. Rooney, Pace Inc., 744 F.2d 255, 263 (2d Cir. 1984).
[18] Internal affairs rule has been applied repeatedly in claims of breach of fiduciary duty. See Hausman, 299 F.2d at 703; Druck Corp. v. Macro Fund (U.S.) Ltd., No. 02cv6164, 2007 U.S. Dist LEXIS 7805, at *1-4; Buckley, 2007 U.S. Dist. LEXIS 37107, at *13; Winn, 2007 U.S. Dist. LEXIS 33936, at *5; Walton v. Morgan Stanley & Co., 623 F.2d 796, 798 (2d Cir. 1980) ("New York law dictates that the law of the state of incorporation governs an allegation of breach of fiduciary duty owed to a corporation"); BBS Norwalk One, Inc. v. Raccolta, Inc., 60 F. Supp. 2d 123, 129 (S.D.N.Y. 1999) (under New York law, "a claim of breach of fiduciary duty owed to a corporation is governed by the law of the state of incorporation."); City of Sterling Heights Police, 423 F. Supp. 2d at 363-64.
[19] Hausman, 299 F.2d at 705, (citing Loucks v. Standard Oil Co., 224 N.Y. 99, 111) (Cardozo, J.,)) ("[Courts] are not free to refuse to enforce a foreign right at the pleasure of the judges, to suit the individual notion of expediency or fairness. They do not close their doors, unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal.")(citations omitted). See also, Seybold, 2007 U.S. Dist. LEXIS 16994, at *20 ("This court cannot substitute notions of 'public policy' for well established New York conflict of laws principles, and we are unwilling to conclude that this would be done by New York Courts.").

decided."[20]   While numerous plaintiffs have argued for a public policy exception, there are no cases in this Circuit that have acknowledged a public policy exception on our facts where defendants have minimal contacts with New York. Although Plaintiffs correctly point out that the internal affairs doctrine is not automatically applied, they fail to demonstrate that the internal affairs doctrine should not be applied to the case at bar.

Plaintiffs rely on *Stephens v. Nat'l. Distillers and Chem. Corp.*, No. 91cv2901, 1996 U.S. Dist. LEXIS 6915 (S.D.N.Y. May 21, 1996) as an example of the public policy exception as it should be applied in this case. The court in *Stephens* applied New York law to a breach of fiduciary duty claim against a Kentucky corporation and held that a foreign insurer doing business in New York is subject to New York Insurance Law. *Id.* at 14. The court based its decision on public policy concerns, asserting "[T]he public policy concerns of New York State as embodied in the New York Insurance Law mandate a departure from the 'internal affairs' doctrine." *Id.* at 15.

However, *Stephens* is inapposite for several reasons. First, that case involved a claim by a liquidator of an insurance company, and not a shareholder seeking to sue derivatively. Second, the court in Stephens found that because the case specifically implicated New York Insurance Law, "[T]he public policy concerns of New York State ... mandate a departure from the 'internal affairs' doctrine." *Stephens*, 1996 U.S. Dist. LEXIS, at *15. Application of the internal affairs doctrine in this instance leads us to British corporate law. There is no overriding New York public policy at issue here. The company in *Stephens* was licensed to and did conduct its business in New York, and most events at issue in that case took place in this state. *Id.* at 13. Here, BP does not conduct business in New York, and most of the events at issue took place outside of New York.

Further, Plaintiffs' reliance on *Stephens* is also misplaced because in *Stephens* there was no conflict of law between New York and Kentucky. *Id.* at 16. The court stated, "the applicable standards on this motion for summary judgment would not differ

---

[20] Rest. (2d.) of Conflict of Laws at § 302, cmts. b and c ("Law of state other than state of incorporation may apply 'where the corporation does all, or nearly all, of its business and has most of its shareholders in this other state and has little contact, apart from the fact of its incorporation, with the state of incorporation"). *See also,* Stephens v. National Distillers and Chem. Corp., No. 91cv2019, 1996 U.S. Dist. LEXIS 6915 at *13 (S.D.N.Y. May 21, 1996); *Greenpum,* 36 N.Y. 2d at 478 ("[T]his record is barren of proof of a significant association or cluster of significant contacts on the part of the investment trust with the State of new York to support a finding of such 'presence' of the investment trust in our State as would, irrespective of other considerations, call for the application of new York law. There is no record proof of where the business of the trust is transacted, where its principal office is located or its record kept, where the trustees meet . . .").

under Kentucky law." *Id.* Here, England's Companies Act 1985 precludes shareholders from bringing derivative actions except in three very limited circumstances,[21] and New York corporation law provides a more liberal derivative remedy.[22]  Precisely for this reason, the court in *Seybold v. Greiner* rejected the plaintiff's attempt to rely on *Stephens* in support of a public policy exception and depart from the internal affairs doctrine. *Seybold*, 2007 U.S. Dist. LEXIS 16994, at *23.

Plaintiffs cite no case which applies a public policy exception analogous to the facts presented in the instant case. In *Norlin Corp. v. Rooney, Pace, Inc.*, 744 F.2d 255, 263-64 (2d Cir. 1984), the court applied New York law to a derivative suit on behalf of a foreign corporation because the company's principal place of business was in New York and the board of directors regularly met in New York. Further, as in *Stephens*, there was no conflict of law in *Norlin*. The court stated "[i]t is of interest to note that the relevant rules in New York and Panama are identical on this point...[I]t would be an absurd result indeed if neither jurisdiction could apply its law, and the public policy of both should be frustrated." *Id.* In *Hausman* 299 F.2d at 698, a factually similar case – a shareholder derivative action in which plaintiff claimed breach of fiduciary duty, waste of corporate assets and also unauthorized trading – the court applied the internal affairs doctrine. Finding no public policy exception, the court held, "we are not persuaded that the Venezuelan law under consideration is 'immoral' or 'fundamentally unjust' as required to deviate from the well established internal affairs principles." *Id.* at 705.  The court in *Hausman* also pointed out that there has been no case in which a court has held that a "foreign statute governing the relations of stockholders inter sese in a corporation chartered in its jurisdiction 'outrages the public policy of New York.'" *Id.*

Even more significant, courts in this jurisdiction have faced the choice of law issue where the place of incorporation does not recognize plaintiff's cause of action (as the instant case presents) and have found a public policy exception inapplicable in such instances.  For example, in *Seybold*, 2007 U.S. Dist. LEXIS 16994, at *1, a shareholder derivative action against a foreign bank in which the plaintiff claimed breach of fiduciary

---

[21] *Infra* page 12.
[22] *See e.g.*, Hart v. General Motors Corp., 517 N.Y.S.2d 490, 493 (1987) (In a shareholder derivative action, the court held that by "incorporating in a particular State, shareholders, for their own particular reasons, determine the body of law that will govern the internal affairs of the corporation and the conduct of their directors").

duty, the court held that the laws of the jurisdiction of the foreign bank applied despite the fact that the foreign jurisdiction did not recognize shareholder derivative suits and thus, the suit was unlikely to go forward. Further, in *Seghers v. Thompson*, No. 06cv308, 2006 U.S. Dist. LEXIS 71103, at *11 (S.D.N.Y. Sept. 27, 2006), another shareholder derivative action, the court looked to the internal affairs doctrine and applied British law, even though British law did not recognize the plaintiff's claim.

Therefore, this Court agrees with Defendants that the appropriate choice of law doctrine, at least in New York, is the internal affairs doctrine, and that no public policy exception is appropriate. Since BP is incorporated in England and Wales, the law of England and Wales governs the substantive claims of this case.

### i.   English Law

Turning to English law as the internal affairs doctrine dictates, English law provides a narrowly tailored cause of action for a shareholder to sue on behalf of a corporation. The leading case, *Foss. v. Harbottle* (1843) 2 Hare 461 (Eng.), established over 150 years ago that a shareholder may not bring a derivative action for "wrongs" to the company if those wrongs are capable of ratification by a majority of shareholders— and notably, breach of fiduciary duty is capable of ratification under English law—unless an exception applies. *Id.* There are three narrow exceptions to the *Foss v. Harbottle* rule: (1) the alleged wrong is ultra vires, (2) the validity of the transaction is dependent upon approval by a majority of shareholders greater than a simple majority, (3) wrongdoers profited at the expense of the company through self-dealing *and* the wrongdoers are in voting control of the company—i.e. fraud on the minority. Id. ¶ 17 (emphasis added).

### ii.   Exceptions to *Foss v. Harbottle*

The only contested exception fails since Plaintiffs' have not and cannot allege control over a majority of the shares. Therefore, even if the Plaintiffs provided sufficient support for self-dealing at the expense of BP, they have not shown the necessary control to trigger the third exception.

### iii.   The Companies Act 2006

The United Kingdom has recently passed the Companies Act 2006, which recognizes a shareholder's derivative claim as a cognizable cause of action. The Act becomes effective in October 2007. Plaintiffs claim in their Opposition that the law's

promulgation illustrates that the United Kingdom believes the common law rule enunciated in *Foss v. Harbottle* is unfair and violative of public policy. Defendants argue that the Companies Act 2006 does not apply retroactively, and therefore, is inapplicable. The U.K. Minister for Industry and the Regions, Hon. Margaret Hodge, recently issued a statement which clarified the question of retroactive application of The Companies Act 2006. Defs.' Ltr. to Hon. Harold Baer, Jr., Jun. 29, 2007. Ms. Hodge unequivocally stated that "the newer, clearer procedures should be used for all claims stated on or after 1 October 2007 [and] courts should ensure that the outcome of any claim based on acts or omissions by a director before 1 October 2007 will be what it would have been under the old, common law that applied at the time."[23]

## IV.   CONCLUSION

Because I find that English law governs and prohibits derivative actions, and Plaintiffs have not plead facts sufficient to sustain this action pursuant to one of the three narrow exceptions enumerated in England's Companies Act 1985, the Complaint is dismissed pursuant to Fed. R. Civ. P. 12(b)(6) without prejudice.

The Clerk of the Court is instructed to close this motion and remove this case from my docket.

**IT IS SO ORDERED.**
**New York, New York** -
**July 23, 2007**

_____
U.S.D.J.

---

[23] Plaintiffs' letter dated July 3, 2003, in response to Defendants letter dated June 29, 2007, is unavailing. The minister's statement is clear. Parl. Deb., H.C. (June 26, 2007) 21WS at 23 WS, *available at* http://www.publications.parliament.uk/pa/cm200607/cmhansrd/cm070626/wmstext/70626m0002.htm#070 62656000023

11